J-A18039-18

2018 PA Super 329

COMMONWEALTH OF PENNSYLVANIA,   :      IN THE SUPERIOR COURT OF
                                          :             PENNSYLVANIA
                  Appellee         :
                                            :
              v.                       :
                                            :
DAVID HAYS VENABLE, SR.,          :
                                            :
                 Appellant        :       No. 3581 EDA 2017

Appeal from the Judgment of Sentence October 6, 2017
in the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0001327-2017

BEFORE:  STABILE, J., STEVENS, P.J.E.* and STRASSBURGER, J.**

OPINION BY STRASSBURGER, J.:          **FILED DECEMBER 04, 2018**

David Hays Venable, Sr. (Appellant) appeals from the October 6, 2017 judgment of sentence of 30 days to six months of incarceration following his convictions for driving under the influence (DUI) and careless driving. Specifically, Appellant challenges the denial of his pre-trial suppression motion, which alleged that his warrantless blood draw was obtained in violation of **Birchfield v. North Dakota**, __ U.S. __, 136 S.Ct. 2160 (2016),[1] and the traffic stop was unlawful.  We affirm.

On November 16, 2016, at approximately 1:30 a.m., Sergeant Jeffrey Johnston of the Hellertown police department was stopped at a red light on Main Street behind Appellant.  When the light turned green, Appellant made

_____

[1] **Birchfield** held that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." **Id.** at 2186.

_____

* Former Justice specially assigned to the Superior Court.

** Retired Senior Judge assigned to the Superior Court.

a quick right turn onto High Street, "spinning his tires, causing the rear end of the truck to kick out or fishtail[ into the other lane, and] … then accelerated very quickly west on High Street." N.T., 8/15/2017, at 7, 17. At that point, Sergeant Johnston activated his lights and sirens to conduct a traffic stop. Appellant did not stop. He continued to drive carelessly, including failing to utilize a turn signal. He eventually stopped on Diamond Street and attempted to reverse into a parking space, forcing Sergeant Johnston to reverse his police vehicle to avoid being struck. *Id.* at 7-8.

Appellant exited the driver's seat and attempted to leave, but Sergeant Johnston instructed Appellant to remain in his vehicle. Sergeant Johnston approached Appellant in the driver's seat, and informed him that he was stopped because of "the reckless driving of spinning his tires and fishtailing at the intersections of High and Main Street[.]" *Id.* at 9. Appellant's speech was slurred, he was unable to grab his requested paperwork with his fingers, and Sergeant Johnston detected the odor of alcohol from inside the vehicle. *Id.* at 10.

Based on this interaction, Sergeant Johnston had Appellant perform multiple field sobriety tests, including the walk-and-turn test and one-leg stand test, which Appellant failed. Based upon his entire interaction with Appellant to that point, Sergeant Johnston believed Appellant was under the influence of alcohol to the point that he was incapable of driving safely. *Id.* at 14.

Appellant was arrested and transported to the Bethlehem Township DUI Center for further processing. The blood draw procedure was video recorded at the DUI Center, and that recording was presented to the suppression court in connection with Appellant's challenge to the warrantless blood draw. The video was not made part of the certified record on appeal. However, the parties agree[2] that Appellant was read the revised DL-26B form,[3] he signed it, and he agreed to submit to a blood draw, which indicated a blood alcohol content (BAC) of 0.15. *Id.* at 19-20, 24. *See also* Appellant's Brief at 9-10.

Appellant was charged with DUI – general impairment (as a first offense), DUI – high rate of alcohol (as a second offense), and careless driving. Prior to trial, Appellant filed a motion to suppress, claiming that the

---

[2] Appellant's *Birchfield* claim does not challenge the court's factual findings, but instead challenges the court's legal conclusions about the effect of *Birchfield* and Appellant's prior knowledge of enhanced criminal penalties pre-*Birchfield* on Appellant's ability to voluntarily consent after being read a DL-26B form. Thus, we are not hampered by the video's absence.

[3] Prior to *Birchfield*, officers were statutorily required to warn individuals arrested for DUI that refusal to submit to a blood draw would result in enhanced criminal penalties. 75 Pa.C.S. § 1547(b)(2)(ii). To comply with this statutory requirement, officers would read Pennsylvania Department of Transportation (PennDOT) Form DL-26, which warned individuals of the enhanced criminal penalties if they refused to consent to a blood draw. One week after *Birchfield* was issued, "PennDOT, at the request of the Pennsylvania District Attorneys Association and a number of county district attorneys, amended Form DL–26 to remove any reference to enhanced criminal penalties for the refusal to submit to a blood test. The new form is known as Form DL–26B." *Commonwealth v. Robertson*, 186 A.3d 440, 443 n.1 (Pa. Super. 2018).

traffic stop was unlawful, and any consent to the warrantless blood draw "was accomplished only after a warning that a failure to consent would result in enhanced criminal penalties if convicted, as set forth in Pennsylvania's DL-26 Implied Consent Form, … and was therefore not voluntary and knowing." Omnibus Pre-Trial Motion, 7/7/2017, at ¶ 9.  A hearing was held where the aforementioned facts were developed.  The trial court denied the motion, finding that Sergeant Johnston had probable cause to conduct the traffic stop and Appellant voluntarily consented to a blood draw after being read the DL-26B form.  Order, 9/27/2017, at 5-6.

Following a stipulated nonjury trial, Appellant was convicted of DUI – high rate of alcohol and careless driving, and was sentenced as indicated above.  Appellant timely filed a notice of appeal.[4]  Appellant presents two issues for this Court's consideration.

1. Whether the trial court erred in refusing to suppress the results of a blood draw where Appellant was read the DL-26B warnings which do not address enhanced criminal penalties and under the totality of the circumstance[s] Appellant did not know[ingly] and voluntary[ily] give his consent to the blood draw?

2. Whether the trial court erred in finding the arresting officer had probable cause or re[a]sonable suspicion to perform a valid traffic stop?

---

[4] Appellant complied with Pa.R.A.P. 1925(b).  The trial court complied with Pa.R.A.P. 1925(a) by filing a statement directing this Court to its September 27, 2017 order and statement of reasons denying Appellant's motion to suppress.

- 4 -

Appellant's Brief at 5 (unnecessary capitalization and suggested answers omitted).

We consider Appellant's claims mindful of the following.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

*Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)).

We begin with an overview of *Birchfield*, its effect on our DUI laws,

and forms DL-26 and DL-26B, as they relate to Appellant.

In *Birchfield*, the Supreme Court of the United States held that criminal penalties imposed on individuals who refuse to submit to a warrantless blood test violate the Fourth Amendment (as incorporated into the Fourteenth Amendment). Within one week of that decision, PennDOT revised the DL–26 form to remove the warnings mandated by 75 Pa.C.S.[] § 3804 that theretofore informed individuals suspected of DUI that they would face enhanced criminal penalties if they refused to submit to a blood test [in order to comply with *Birchfield*]. It was this revised form, known as Form DL–26B (which did not include warnings regarding enhanced criminal penalties), that the [police] read to [Robertson].

\*\*\*

This Court subsequently held that imposing enhanced criminal penalties for failure to consent to a blood draw constituted an illegal sentence because of ***Birchfield***. [***See***] ***Commonwealth v. Giron***, 155 A.3d 635, 639 (Pa. Super. 2017).

On July 20, 2017, Governor Thomas W. Wolf signed into law Act 30 of 2017[,] which amended 75 Pa.C.S.[] § 3804 to comport with ***Birchfield***. Specifically, Act 30 provides for enhanced criminal penalties for individuals who refuse to submit to blood tests only when police have obtained a search warrant for the suspect's blood. ***See*** 75 Pa.C.S.[] § 3804(c). Hence, from July 20, 2017 onwards the DL–26B form conforms to [the revised] statutory law. For approximately the previous 13 months, including at the time[] of [Robertson's] arrest[], the DL–26B form warnings were consistent with the law as interpreted by the Supreme Court of the United States and this Court, but inconsistent with the (unconstitutional) provisions of Title 75.

***Robertson***, 186 A.3d at 444-45 (some citations omitted).

Like Robertson, Appellant was read the DL-26B warnings prior to Act 30's amendment of section 3804. On appeal, Appellant contends that this inconsistency between the DL-26B form and the provisions of our DUI statute that were rendered unconstitutional by ***Birchfield***, but not statutorily amended until Act 30, required suppression of his blood draw. Appellant's Brief at 19-20. In other words, Appellant argues that because subsection 3804(c) subjected him to enhanced criminal penalties, and subsection 1547(b)(2)(ii) required the police to warn Appellant of such penalties, the blood draw violated ***Birchfield***.

We recently rejected Appellant's flawed argument and held that PennDOT had the authority to amend the DL-26 form to comport with **Birchfield** prior to the enactment of Act 30. **Robertson**, 186 A.3d at 446. In doing so, we adopted the following well-reasoned analysis of the Commonwealth Court.

> It is true, as [Garlick] argues, that the language contained in [subs]ection 1547(b)(2)(ii) was mandatory at the time [the t]rooper requested that [Garlick] submit to a blood test. However, while [subs]ection 1547(b)(2)(ii) then commanded that a warning about enhanced criminal penalties be given, the purpose behind that provision is to make a licensee aware of the consequences of a refusal to take the test so that he can make a knowing and conscious choice.
>
> Following **Birchfield**, and as the Superior Court concluded thereafter, a licensee cannot be criminally punished for refusing a police officer's request to test his blood pursuant to the Implied Consent Law. Although, at the time [the t]rooper requested that [Garlick] submit to a blood test, [subs]ection 1547(b)(2)(ii) still required a warning that a licensee would be subject to enhanced criminal penalties under [subs]ection 3804(c) for refusing a test of his blood, [Garlick] could not, as a matter of constitutional law, be subject to such penalties. Stated simply, enhanced criminal penalties were not a consequence of [Garlick]'s refusing the requested blood test. [Garlick]'s argument is, in effect, that because the General Assembly did not immediately amend [subs]ection 1547(b)(2)(ii), [Penn]DOT and the police had to continue to apply [subs]ection 1547(b)(2)(ii). However, the effect of **Birchfield** and the Superior Court cases that followed was to render the criminal penalties warned of in [subs]ection 1547(b)(2)(ii) as applied to blood testing unenforceable and to effectively sever that section from the rest of the [Motor] Vehicle Code. **See** 1 Pa. C.S.[] § 1925.

**Id**. at 445-46, *quoting* **Garlick v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing**, 176 A.3d 1030, 1036 (Pa. Cmwlth. 2018) (*en*

J-A18039-18

*banc*).  For the same reasons stated in ***Robertson*** and ***Garlick***, Appellant is not entitled to relief on this basis.

As to Appellant's alternative argument that his awareness of pre-***Birchfield*** enhanced criminal penalties for refusing a blood draw rendered the instant blood draw involuntary, this Court has also rejected this claim.

> [I]t is not necessary that the police completely review changes in the law, from the time of a motorist's previous arrest or DUI-related schooling until the motorist's next traffic stop. Johnson's ignorance of the most recent Supreme Court decisional law did not impose upon [the police officer] an affirmative duty to provide her with an update on criminal procedure prior to requesting a blood-draw. Neither our state nor the federal constitution compels our police officers to serve as road-side law professors.

> Given the foregoing, Johnson's personal failure to realize that the Supreme Court's issuance of ***Birchfield*** struck down § 3804(c)'s enhanced criminal penalties is irrelevant.  She apparently believed that our Commonwealth's enhanced penalties remained in full force and effect until a Pennsylvania appellate court declared them unconstitutional or the General Assembly amended them to comport with ***Birchfield***. Her misconception…is predicated upon a fundamentally flawed view of our federalism.

***Commonwealth v. Johnson***, 188 A.3d 486, 491 (Pa. Super. 2018) (finding that Johnson's ignorance of constitutional law did not render her consent involuntary).  ***See also Commonwealth v. Miller***, 186 A.3d 448, 452 (Pa. Super. 2018) ("Repeat DUI offenders, owing to past legal transgressions, are not entitled to a benefit that would be unavailable to first-time DUI offenders. …  The absurdity of [such an] argument is self-evident.").

- 8 -

Thus, on the day that *Birchfield* became law, Appellant should have known that the enhanced criminal penalties codified in subsection 3804(c) were without legal effect, and that the police were not obligated to notify Appellant of this unconstitutional subsection because it was no longer applicable. *See Johnson*, 188 A.3d at 491; *Robertson*, 186 A.3d at 447. Accordingly, we reject Appellant's argument, and find that Appellant's blood draw did not violate *Birchfield*.

Having determined that *Birchfield* does not require suppression of Appellant's blood draw, we now consider whether Appellant's consent was voluntary. In that regard, our Supreme Court has held as follows.

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice— not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

*Commonwealth v. Evans*, 153 A.3d 323, 328 (Pa. Super. 2016), *quoting Commonwealth v. Smith*, 77 A.3d 562, 573 (Pa. 2013) (internal citations, quotations, and corrections omitted).

While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's

custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

**Robertson**, 186 A.3d at 447 (citations omitted).

The undisputed facts[5] reveal that Appellant's consent was objectively valid. As in **Johnson, supra**, the police "had no obligation to enlighten [Appellant] as to the full details of federal constitutional law; [the police] only needed to tell [Appellant] the current, legal consequences of refusing to consent to the blood-draw. [They] did [so through the DL-26B form]. Thus, [Appellant's] consent was voluntary." **Id.** at 491 (citation omitted).

We now address Appellant's claim that the trial court erred in denying his motion to suppress because Sergeant Johnston lacked the probable cause necessary to stop Appellant's vehicle. We begin with an overview of the law governing the level of proof necessary to justify a traffic stop.

> Whenever a police officer … has reasonable suspicion that a violation of [the Motor Vehicle Code] is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine

---

[5] It is Appellant's responsibility to complete the certified record on appeal. **Commonwealth v. Bongiorno**, 905 A.2d 998, 1000 (Pa. Super. 2006) (*en banc*). While we do not have the benefit of the video recording of the blood draw, as noted *supra*, Appellant and the Commonwealth agreed to the underlying facts. Appellant's argument instead centers upon the legal effect of **Birchfield**, the DL-26B warnings, and Appellant's subjective knowledge of the law.

number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.[ ] § 6308(b).

Thus, § 6308(b) requires only reasonable suspicion in support of a stop for the purpose of gathering information necessary to enforce the Vehicle Code violation. However, in [**Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*),] this Court held that a police officer must have probable cause to support a vehicle stop where the officer's investigation subsequent to the stop serves no "investigatory purpose relevant to the suspected [Vehicle Code] violation." In **Feczko**, the police officer observed the defendant's vehicle cross over the double yellow median line and the fog line. During the ensuing vehicle stop, the officer noticed the scent of alcohol on the defendant's breath. Importantly, the officer did not testify that the stop was based on suspicion of DUI. The defendant was convicted of DUI and a motor vehicle code violation, and argued on appeal that the vehicle stop was illegal.

This Court noted the distinction between "the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code." **Id.** at 1289 (citing **Commonwealth v. Sands**, 887 A.2d 261, 270 (Pa. Super. 2005)). Whereas a vehicle stop for suspected DUI may lead to further incriminating evidence such as an odor of alcohol or slurred speech, a stop for suspected speeding is unlikely to lead to further evidence relevant to that offense. Therefore:

[A] vehicle stop based solely on offenses not 'investigatable' cannot be justified by a mere reasonable suspicion, because the purposes of a **Terry** [1] stop do not exist—maintaining the status quo while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.

_____
[1] **Terry v. Ohio**, 392 U.S. 1 [] (1968).

- 11 -

***Commonwealth v. Landis***, 89 A.3d 694, 702–03 (Pa. Super. 2014) (some citations omitted).

Here, Sergeant Johnston did not testify that he stopped Appellant in order to conduct additional investigations into a potential DUI. Rather, he stopped Appellant for a Motor Vehicle Code violation: careless driving. Accordingly, a showing of probable cause was necessary to justify the sergeant's stop of Appellant for a violation of 75 Pa.C.S. § 3714(a) ("Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.").

In denying Appellant's motion to suppress, the trial court found that Sergeant Johnston had probable cause to believe that Appellant was in violation of subsection 3714(a) of the Motor Vehicle Code based on: (1) "mak[ing] a quick right turn that caused the rear wheels of his vehicle to kick-out into the opposing lane of traffic[,]" (2) making a turn without signaling, and (3) "upon attempting to park the vehicle, [Appellant's] revers[ing] in such a manner that Sergeant Johnston was also required to reverse his vehicle to avoid a collision." Order, 9/27/2017, at 6.

While pages 28 and 29 are missing from the argument section of Appellant's brief, it appears that part of his argument challenges the trial court's "consideration of actions that happened after the 'fishtail[.]'" Appellant's Brief at 27. To the extent that the trial court considered events

that occurred after the traffic stop was initiated in determining whether probable cause existed for the traffic stop, the trial court erred.

Nevertheless, the trial court's findings before the stop were enough to establish probable cause for the stop. Here, Appellant was subjected to a seizure when Sergeant Johnston activated his lights and sirens to conduct the traffic stop, notwithstanding Appellant's failure to comply immediately. *See Commonwealth v. Livingstone*, 174 A.3d 609, 621 (Pa. 2017) (plurality) (noting that "we simply cannot pretend that a reasonable person, innocent of any crime, would not interpret the activation of emergency lights on a police vehicle as a signal that he or she is not free to leave"). Therefore, Sergeant Johnston must have possessed probable cause to believe that a traffic violation had occurred prior to activating his lights and sirens. Upon review, we find that Sergeant Johnston's observations of Appellant "spinning his tires, causing the rear end of the truck to kick out or fishtail[ into the other lane, and] … then accelerat[ing] very quickly west on High Street[,]" were sufficient to give the sergeant probable cause to stop Appellant for careless driving. N.T., 8/15/2017, at 7, 17. *See Commonwealth v. Wilson*, 111 A.3d 747, 755 (Pa. Super. 2015) (finding that the officer possessed probable cause to believe that Wilson had violated the Motor Vehicle Code provisions of, *inter alia*, careless driving, when the officer observed Wilson, *inter alia*, swerve over the yellow lines and fog line multiple times).

Accordingly, the trial court properly denied Appellant's motion to suppress, and we affirm Appellant's judgment of sentence.[6]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/18

---

[6] We may affirm on any basis. **See Commonwealth v. Clouser**, 998 A.2d 656, 661 n.3 (Pa. Super. 2010).