J-A26033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
STEPHANIE LYNN MACCARTNEY :
:
Appellant : No. 410 WDA 2019

Appeal from the Judgment of Sentence Entered February 11, 2019
In the Court of Common Pleas of Greene County Criminal Division at
No(s): CP-30-CR-0000006-2018

BEFORE: SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY OLSON, J.: **FILED DECEMBER 12, 2019**

Appellant, Stephanie Lynn MacCartney, appeals from the judgment of sentence entered on February 11, 2019, as made final by the denial of a post-sentence motion on March 1, 2019, following her bench trial convictions for driving under the influence of alcohol (DUI) (general impairment)[1] and violating 75 Pa. C.S.A. § 3301(a) (driving on right side of the roadway). We affirm.

The facts and procedural history of this case are as follows. In the early morning hours of October 28, 2017, members of the Jefferson Volunteer Fire Department (Fire Department) responded to a single motor vehicle accident in Morgan Township, Pennsylvania. N.T. Trial, 12/13/18, at 13. Upon arrival, Appellant's car was found "located off the roadway, several yards up against

_____

[1] 75 Pa.C.S.A. § 3802(a)(1).

[a] barn." *Id.* at 14. Appellant was in the front of the car, lying across both the driver's and passenger's seat. *Id.* At that time, Appellant was "alert, answering questions" and "for the most part, cooperative." *Id.* at 14-15. Eventually, Appellant was extricated from the vehicle via a spine board and "loaded into the ambulance for treatment." *Id.* at 16. While in the ambulance, members of the Fire Department made an initial assessment of Appellant and found no signs of head trauma. *Id.* at 22. Appellant, however, did have a laceration above her eye. *Id.* at 22.

Prior to Appellant's transfer to the hospital, Trooper Kevin Kara of the Pennsylvania State Police arrived at the scene. *Id.* at 26. Upon arrival, Trooper Kara attempted to speak with Appellant in the ambulance. *Id.* at 27. Initially, Appellant was unable to provide "some basic information in regard to the crash." *Id.* Trooper Kara noted that Appellant's speech was "slow and sluggish" and that he detected a "strong smell of alcohol." *Id.* The Fire Department then transported Appellant to the hospital. *Id.* Thereafter, Trooper Kara inspected the scene, including Appellant's vehicle. *Id.* at 28. In Appellant's vehicle, Trooper Kara found a can of Miller Lite beer that had "some liquid still in it" and a woman's shoe in the passenger compartment of the vehicle. *Id.* at 28 and 37.

Subsequently, Trooper Kara arrived at the hospital and resumed questioning Appellant. *Id.* at 38-39. Eventually, Trooper Kara asked Appellant to consent to a blood draw. *Id.* at 39. Appellant indicated that she did, in fact, consent. *Id.* at 30. A blood test was completed at 6:10 a.m. *Id.*

An analysis was later conducted which revealed that Appellant's blood alcohol content (BAC) was 0.269+/- 0.014.  *Id.* at 7.

On January 12, 2018, the Commonwealth filed a criminal information against Appellant, charging her with DUI: highest rate, DUI: general impairment, and violating 75 Pa. C.S.A. § 3301(a) (driving on right side of the roadway).  Bill of Information, 1/12/18, at 1-3.  On February 14, 2018, Appellant filed a motion to suppress the results of the blood draw.  Appellant's Motion to Suppress, 2/14/18, at 1-5.  A hearing was held on April 24, 2018, and the matter was continued until June 5, 2018.  Ultimately, on July 5, 2018, the trial court denied Appellant's motion.  Trial Court Order, 7/5/18, at 1-7.

Appellant's bench trial commenced December 13, 2018, during which the court found Appellant not guilty of DUI: highest rate, but found her guilty of DUI: general impairment and violating Section 3301(a) of the Vehicle Code.  Trial Court Order, 12/13/18, at 1-2.  On February 11, 2019, the trial court sentenced Appellant to "not less than 30 days nor more than six months [incarceration], with [Appellant] to serve 15 days in Greene County Prison followed by 15 days of house arrest."  Trial Court Opinion, 5/3/19, at 2.  Appellant filed a post-sentence motion on February 15, 2019, which the trial court denied on March 1, 2019.  Trial Court Order, 3/1/19, at 1.  This timely appeal followed.[2]

_____

[2] Appellant filed a notice of appeal on March 15, 2019.  On March 20, 2019, the trial court filed an order directing Appellant to file a concise statement of

Appellant raises the following issues on appeal:

I.     Whether the suppression court erred in denying Appellant's motion to suppress when her consent to a blood draw was obtained while she was in the emergency room receiving medical treatment and awaiting transport to a facility that could provide a higher level of care?

II.    Whether the evidence was insufficient to sustain a conviction for driving under the influence (general impairment) when the Commonwealth presented no evidence that intoxication – rather than injuries sustained – were the cause of Appellant's behavior following the crash?

Appellant's Brief at 6.

In Appellant's first issue, she contends that the trial court erred in denying her motion to suppress.  Specifically, Appellant argues that, because a blood draw constitutes a police search, the police were either required to obtain a warrant or operate within one of the well-established exceptions to the warrant requirement.  *Id.* at 13.  Per Appellant, because the police did not have a warrant and her consent to the blood draw was not made knowingly or voluntarily, the search was invalid.  *Id.* at 13-18.  We disagree.

We adhere to the following standards:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as

---

matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1).  Appellant timely complied.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 3, 2019.

remains un[-]contradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the [trial court's] conclusions of law [ ] are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Shreffler*, 201 A.3d 757, 763 (Pa. Super. 2018) (internal citation omitted).

Initially, we set forth the following principles of law, which address the validity of warrantless blood draws as follows:

In *Birchfield [v. North Dakota*, 136 S.Ct. 2160 (2016)], the Supreme Court of the United States held that criminal penalties imposed on individuals who refuse to submit to a warrantless blood test violate the Fourth Amendment (as incorporated into the Fourteenth Amendment). Within one week of that decision, [the Pennsylvania Department of Transportation, in order to comply with *Birchfield*] revised the [standard consent form used by police, known as the] DL–26 form[,] to remove the warnings mandated by 75 Pa.C.S.A. § 3804 that theretofore informed individuals suspected of DUI that they would face enhanced criminal penalties if they refused to submit to a blood test[.] [The] revised form [is] known as Form DL–26B[.]

\* \* \*

This Court subsequently held that [ ] enhanced criminal penalties [imposed] for failure to consent to a blood draw constituted an illegal sentence because of *Birchfield*. *See Commonwealth v. Giron*, 155 A.3d 635, 639 (Pa. Super. 2017).

On July 20, 2017, Governor Thomas W. Wolf signed into law Act 30 of 2017, which amended 75 Pa.C.S.A. § 3804 to comport with *Birchfield*. Specifically, Act 30 provides for enhanced criminal penalties for individuals who refuse to submit to blood tests only

when police have obtained a search warrant for the suspect's blood. **See** 75 Pa.C.S.A. § 3804(c). Hence, from July 20, 2017 onwards the DL–26B form conforms to the revised statutory law.

**Commonwealth v. Venable**, 200 A.3d 490, 495 (Pa. Super. 2018) (original brackets omitted).

With this backdrop in mind, we turn to Appellant's claim that her consent was involuntary, and thus, invalid. Specifically, Appellant maintains that her consent was not voluntary for two reasons. First, Appellant posits that, following her "severe accident," she sustained "traumatic head injuries" which "undoubtedly affected her ability to understand what was happening, including her right to refuse a blood draw." Appellant's Brief at 17. Second, Appellant cites the fact that she did not verbally consent to the officer's request for a blood draw or sign or read any consent forms. **Id**. at 18. Thus, per Appellant, the Commonwealth did not sustain its burden of proving that her consent was voluntary, and as such, the trial court erred in denying her motion to suppress the results of the blood draw. **Id**. We disagree.

In examining whether consent is voluntary, we note:

In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the

- 6 -

circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

*Venable*, 200 A.3d at 497 (citations omitted).

Herein, we conclude, as the trial court did, that, "given the totality of the circumstances," the "seizure of blood was voluntary and consensual." Trial Court Order, 7/5/18 at 5-7. At the hearing, Trooper Kara testified as follows:

**[Counsel]**: And, when you got to the hospital, did you – where was [Appellant]?

**[Trooper Kara]**: She was in the emergency room.

**[Counsel]**: And, what did you indicate to her when you got to the hospital?

**[Trooper Kara]**: When I got to the hospital, she was being looked [at in] the emergency room, I believe they were doing some – some tests on her. And, around 6:00 [a.m.], I asked if she would consent to a chemical test.

**[Counsel]**: And, what did you do when you asked if she would consent to a chemical test?

**[Trooper Kara]**: I asked if she would be willing to take the test and I read her the DL-26[B form].[3]

---

[3] The DL-26B form that was read to Appellant provided, in relevant part, as follows:

- 7 -

\*\*\*

**[Counsel]**: And, which sections did you read?

**[Trooper Kara]**: I read sections, [one, two, three, and four].

\*\*\*

**[Counsel]**: And, what was her reaction when you read the DL-26[B]?

**[Trooper Kara]**: No reaction.  She was okay with it.

**[Counsel]**: What did she indicate to you about the blood draw?

**[Trooper Kara]**: She indicated that she would be willing to take it and that she – she could estimate her BAC.

**[Counsel]**: What would – what [did she] estimate [was] her BAC?

**[Trooper Kara]**: She estimated her BAC about [0].3.

---

It is my duty as a police officer to inform you of the following:

  I.    You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

 II.    I am requesting that you submit to a chemical test of blood.

III.    If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months.  If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.

 IV.    You have no right to speak with an attorney or anyone else before deciding whether to submit to testing.  If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

N.T. Pre-Trial Hearing, 4/24/18, Commonwealth's Exhibit 2.

N.T. Pre-Trial Hearing, 4/24/18, at 29-30. We hold that an objective evaluation of the aforementioned exchange would result in the conclusion that Appellant voluntarily consented to the blood draw. *See Venable*, 200 A.3d at 497. The fact that Appellant – herself - estimated her BAC to be "[0].3" after being read the DL-26B form, evidences her willingness to allow a blood draw and the voluntariness of her consent. N.T. Pre-Trial Hearing, 4/24/18, at 30. Indeed, she clearly knew incriminating evidence would be found but still cooperated with the police. Therefore, we conclude that the trial court's factual findings are supported by the record and as such, the denial of Appellant's motion to suppress was not erroneous.

In Appellant's second issue, she contends that the evidence was insufficient to support her conviction of DUI: general impairment. Appellant's Brief at 18. Specifically, Appellant argues that the Commonwealth failed to present evidence that "alcohol, rather than the injuries suffered from the crash," caused Appellant's subsequent behavior, and therefore, "the [t]rial [c]ourt erred in finding [that] there was sufficient evidence to convict Appellant." *Id.* at 20-21. We disagree.

In *Commonwealth v. Hennigan*, 753 A.2d 245 (Pa. Super. 2000), this Court set forth the applicable standard for assessing a challenge to the sufficiency of the evidence:

> "The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Heberling*, 678 A.2d

794, 795 (Pa. Super. 1996), *citing **Commonwealth v. Williams***, 650 A.2d 420 (Pa. 1994)). In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. ***Commonwealth v. Cassidy***, 668 A.2d 1143, 1144 (Pa. Super. 1995) (citations omitted). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. ***Commonwealth v. Valette***, 613 A.2d 548, 549 (Pa. 1992) (citations and quotation marks omitted); ***Commonwealth v. Vetrini,*** 734 A.2d 404, 406–407 (Pa. Super. 1999).

***Hennigan***, 753 A.2d at 253 (parallel citations omitted).

The trial court convicted Appellant of DUI: general impairment, statutorily defined as follows:

(a) General impairment.—

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1). "In order to obtain a conviction pursuant to Section 3801(a)(1), the Commonwealth must prove the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the

- 10 -

consumption of alcohol." ***Commonwealth v. Karns***, 50 A.3d 158, 165 (Pa. Super. 2012) (internal quotations and citation omitted). Our Supreme Court previously outlined the types of evidence the Commonwealth may proffer to sustain a conviction under subsection 3802(a)(1). Such evidence includes the following:

> the offender's actions and behavior, including manner of driving . . . physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech [and BAC] . . . insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving.

***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009).

We conclude that the evidence, construed in the light most favorable to the Commonwealth, was sufficient to sustain Appellant's conviction under subsection 3802(a)(1). The Commonwealth presented evidence that, in the early morning hours of October 28, 2017, Appellant was in a single-vehicle accident. N.T. Trial, 12/13/18, at 25-26. Appellant claimed that "she thought she was pulling into her driveway," but ended up "[striking] a mailbox and utility pole," resulting in her car being "off the roadway, up against a barn." ***Id***. at 15 and 26; ***see Segida***, 985 A.2d at 879 (explaining that the accident, itself, "constitutes evidence that [Appellant] drove when [she] was incapable of doing so safely"). Trooper Kara testified that, while interviewing Appellant, her speech was "slow and sluggish," that he detected a "strong smell of alcohol," and upon searching her vehicle, he found a can of Miller Lite beer that had "some liquid still in it." N.T. Trial, 12/13/18, at 27. Lastly, the blood

test taken at the hospital revealed that Appellant's BAC level was "0.269." **Id.** at 8. "The undisputed evidence of Appellant's strikingly high [BAC] level [] is noteworthy" and, contrary to Appellant's assertions, "the fact-finder is not required to suspend common sense and ignore the fact that [Appellant's] [BAC] was not just elevated, but enormously elevated." **Segida**, 985 A.2d at 879; **see also Commonwealth v. Eichler**, 133 A.3d 775, 787 (Pa. Super. 2016) ("Section 3802(a)(1) does not include "two hour" language, so evidence of blood tests taken more than two hours after driving is admissible under subsection (a)(1)"). As such, we conclude that the evidence was sufficient to convict Appellant under subsection 3802(a)(1).

Judgment of sentenced affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2019