2019 PA Super 159

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LORI KLINER KRENZEL | : | |
| | : | |
| Appellant | : | No. 2049 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 12, 2018
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000445-2017

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY OLSON, J.:                                          **FILED MAY 20, 2019**

Appellant, Lori Kliner Krenzel, appeals from the judgment of sentence entered on June 12, 2018, following her bench trial conviction for driving under the influence of alcohol – highest rate (DUI) pursuant to 75 Pa.C.S.A. § 3802(c).  On appeal, Appellant challenges the trial court's denial of her motion to suppress.  For the reasons that follow, we are constrained to vacate the judgment of sentence, reverse the order denying suppression, and remand for a new trial.

The trial court summarized the facts and procedural history of this case as follows:

> On November 14, 2016, Appellant was pulled over by Officer Kyle Maye and Officer [Robert] Gilbert as the result of her erratic driving behavior that was called in by another motorist.  Officer Maye observed Appellant to have glassy and bloodshot eyes, her speech was slow and soft, and her movements in the vehicle were slow and sluggish.  Officer Gilbert discovered two beer bottles in the passenger side area of Appellant's vehicle.  Officer Maye requested that Appellant exit the vehicle, at which time he

_____
*   Former Justice specially assigned to the Superior Court.

detected the odor of alcohol. He then conducted a series of field sobriety tests, the results of which indicated that Appellant was under the influence of alcohol and/or controlled substances. Officer Maye asked if Appellant was willing to submit to a blood test. Appellant consented. She was then placed under arrest and transported to Chester County Hospital where her blood was drawn within the appropriate two-hour limit.

During the stop, Officer Maye did not draw a weapon. Officer Maye did not advise Appellant that she would face enhanced penalties if she refused [a blood draw]. In her pre-trial motion to suppress, Appellant argued that as the result of a previous arrest for DUI in 2013, she understood that refusal of the blood draw would subject her to adverse criminal penalties. Appellant's basis for consent was not communicated to Officer Maye; therefore, Officer Maye had no knowledge that her consent was based upon Appellant's outdated understanding of Pennsylvania law. Officer Maye neither provided Appellant with misleading or false information in order to get Appellant to consent nor did he use any threat of force or coercion.

Appellant filed a [m]otion to [s]uppress on May 1, 2017. Following a hearing held on March 22, 2018, the [trial] court denied the motion by [o]rder dated March 23, 2018. A bench trial was held on April 4, 2018. A verdict was delivered on April 18, 2018, finding [] Appellant guilty of [DUI] in violation of 75 Pa.C.S.A. § 3802(c). Appellant's sentencing was deferred for consideration of the Intermediate Punishment Program (IPP). On June 12, 2018, Appellant was sentenced to IPP which included 15 days of incarceration, 75 days of electronic home confinement and probation, community service[,] and a fine.

Trial Court Opinion, 8/3/2018, at 1-3 (record citations omitted). This timely appeal resulted.[1]

On appeal, Appellant presents the following issue for our review:

---

[1] Appellant filed a notice of appeal on July 10, 2018. On July 17, 2018, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 3, 2018.

1. Did not the [trial] court err in denying Appellant's motion to suppress, under the federal and state constitutions, the test results of a warrantless blood draw where Appellant's alleged consent to the blood draw was not voluntary under the totality of the circumstances?

Appellant's Brief at 4.

In developing her claim, Appellant points out that her blood draw constituted a police search, that police drew her blood without a warrant, and, therefore, the blood draw was only valid if her consent were voluntary. *Id.* at 9. Appellant maintains that her consent was not voluntary for several reasons. First, Appellant posits that she had a previous arrest for DUI in 2013 and, at that time, refusal of a blood test subjected DUI offenders to more severe criminal penalties. *Id.* at 11-12. Appellant argues that her consent for the blood draw at issue here was based on her prior knowledge of Pennsylvania law and that her "subjective [belief] regarding her ability to refuse to consent to a search" should be considered as part of the totality of the circumstances in evaluating the voluntariness of her consent. *Id.* at 12. Next, Appellant contends that because she was in police custody at the time of the requested blood draw, her consent was not voluntary. *Id.* at 14-16. Finally, Appellant argues that her consent was involuntary, as the police never advised her of her right to refuse the blood draw. *Id.* at 16-19.

We adhere to the following standards:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the

- 3 -

suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the [trial court's] conclusions of law [] are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

***Commonwealth v. Shreffler***, 201 A.3d 757, 763 (Pa. Super. 2018) (internal citation omitted).

Initially, we set forth fundamental law with regard to warrantless blood draws and consent as follows:

In ***Birchfield*** [***v. North Dakota***, ––– U.S. ––––, 136 S.Ct. 2160 (2016)], the Supreme Court of the United States held that criminal penalties imposed on individuals who refuse to submit to a warrantless blood test violate the Fourth Amendment (as incorporated into the Fourteenth Amendment). Within one week of that decision, [the Pennsylvania Department of Transportation] revised the [standard consent form used by police, known as the] DL–26 form[,] to remove the warnings mandated by 75 Pa.C.S.A. § 3804 that theretofore informed individuals suspected of DUI that they would face enhanced criminal penalties if they refused to submit to a blood test in order to comply with ***Birchfield***. [The] revised form [is] known as Form DL–26B[.]

\*\*\*

This Court subsequently held that [] enhanced criminal penalties [imposed] for failure to consent to a blood draw constituted an illegal sentence because of ***Birchfield***. ***See Commonwealth v. Giron***, 155 A.3d 635, 639 (Pa. Super. 2017).

- 4 -

On July 20, 2017, Governor Thomas W. Wolf signed into law Act 30 of 2017, which amended 75 Pa.C.S.A. § 3804 to comport with **Birchfield**. Specifically, Act 30 provides for enhanced criminal penalties for individuals who refuse to submit to blood tests only when police have obtained a search warrant for the suspect's blood. **See** 75 Pa.C.S.A. § 3804(c). Hence, from July 20, 2017 onwards the DL–26B form conforms to the revised statutory law.

**Commonwealth v. Venable**, 200 A.3d 490, 495 (Pa. Super. 2018) (original brackets omitted).

With this backdrop in mind, we turn to Appellant's claim that her consent was involuntary, and thus, invalid. In examining whether consent is voluntary, we note:

In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

**Id.** at 497 (citations omitted).

- 5 -

First, Appellant argues that the trial court erred by not considering her previous knowledge of DUI law and her subjective belief regarding her ability to refuse consent. This Court has squarely rejected claims arguing that "awareness of pre-***Birchfield*** enhanced criminal penalties for refusing a blood draw render[s a] blood draw involuntary[,]" having opined as follows:

> [I]t is not necessary that the police completely review changes in the law, from the time of a motorist's previous arrest or DUI-related schooling until the motorist's next traffic stop. [An appellant's] ignorance of the most recent Supreme Court decisional law did not impose upon the police [] an affirmative duty to provide her with an update on criminal procedure prior to requesting a blood-draw. Neither our state nor the federal constitution compels our police officers to serve as road-side law professors.
>
> Given the foregoing, [an appellant's] personal failure to realize that the Supreme Court's issuance of ***Birchfield*** struck down § 3804(c)'s enhanced criminal penalties is irrelevant. […Believing] that our Commonwealth's enhanced penalties remained in full force and effect [… was a m]isconception [] predicated upon a fundamentally flawed view of our federalism.

***Id.*** at 496-497 (Pa. Super. 2018), *citing* ***Commonwealth v. Johnson***, 188 A.3d 486, 491 (Pa. Super. 2018) (finding that Johnson's ignorance of constitutional law did not render her consent involuntary); ***Commonwealth v. Miller***, 186 A.3d 448, 452 (Pa. Super. 2018) ("Repeat DUI offenders, owing to past legal transgressions, are not entitled to a benefit that would be unavailable to first-time DUI offenders. ... The absurdity of [such an] argument is self-evident."). Here, Appellant's subjective belief about the state of the law regarding enhanced penalties was irrelevant. We reject Appellant's reliance on her subjective, erroneous misunderstanding of constitutional law,

- 6 -

as that did not render her consent involuntary. ***See Venable***, ***Johnson***, and ***Miller***. As such, the first portion of Appellant's argument fails.

Next, Appellant asserts that police conducted the blood draw while she was in custody and they never informed her of the right to refuse consent under 75 Pa.C.S.A. § 1547(b)(2). ***Id.*** at 14-18. We consider custodial status, but it is not dispositive.

Finally, we consider Appellant's last contention, wherein she asserts that a police officer's failure to inform her of the right of refusal precluded a finding of voluntariness. Section 1547 is relevant to our disposition of this claim and provides, in pertinent part:

> a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section […] 3802 (relating to driving under influence of alcohol or controlled substance)[.]
>
> b) Civil penalties for refusal.—
>
> > (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person[.]
> >
> >           *           *           *
> >
> > (2) **It shall be the duty of the police officer to inform the person that**:

(i)     the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000; and

(ii)    if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S.A. § 1547 (emphasis added).

Our Supreme Court examined Section 1547 in **Commonwealth v. Myers**, 164 A.3d 1162 (Pa. 2017), a case wherein the defendant who was arrested on suspected DUI charges was unconscious in the hospital when a police officer read him consent forms and then directed hospital personnel to conduct a blood draw. The **Myers** Court determined:

> [O]nce a police officer establishes reasonable grounds to suspect that a motorist has committed a DUI offense, that motorist "shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance." 75 Pa.C.S.A. § 1547(a). Notwithstanding this provision, Subsection 1547(b)(1) confers upon all individuals under arrest for DUI an explicit statutory right to refuse chemical testing, the invocation of which triggers specified consequences. **See** 75 Pa.C.S.A. § 1547(b)(1) ("If any person placed under arrest for DUI is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted[.]").
>
> Under this statutory scheme, a motorist placed under arrest for DUI has a critical decision to make. The arrestee may submit to a chemical test and provide the police with evidence that may be used in a subsequent criminal prosecution, or the arrestee may invoke the statutory right to refuse testing, which: (i) results in a mandatory driver's license suspension under 75 Pa.C.S.A. § 1547(b)(1); (ii) renders the fact of refusal admissible as

- 8 -

evidence in a subsequent DUI prosecution pursuant to 75 Pa.C.S.A. § 1547(e); and (iii) authorizes heightened criminal penalties under 75 Pa.C.S.A. § 3804(c) if the arrestee later is convicted of DUI. **In very certain terms, [the Supreme] Court has held that, in requesting a chemical test, the police officer must inform the arrestee of the consequences of refusal and notify the arrestee that there is no right to consult with an attorney before making a decision.** *See* [*Com., Dept. of Transp., Bureau of Traffic Safety v.*] *O'Connell*, 555 A.2d [873,] 877–878 (Pa. 1989). "**An arrestee is entitled to this information so that his choice to take a chemical test can be knowing and conscious.**" *Id.* at 878. **The choice belongs to the arrestee, not the police officer.**

*Myers*, 164 A.3d at 1170–1171 (some case citations, original brackets, and footnote omitted) (emphasis added). The *Myers* Court further noted that 75 Pa.C.S.A. § 1547 expressly "states that, '[i]t shall be the duty of the police officer' to inform the arrestee of the consequences of refusal." *Id.* at 1175 n.12, *citing* 75 Pa.C.S.A. § 1547(b)(2). Our Supreme Court held that "[t]his unambiguous statutory command leaves no doubt regarding the obligations of the police officer requesting the arrestee's submission to a chemical test." *Id.* (citation omitted).

Here, the trial court determined:

In the case at bar, argument at the suppression hearing established that Officer May never warned that Appellant would be subjected to criminal penalties upon her refusal to submit to a blood draw. Appellant was not coerced by the drawing of weapons or threats made against her by Officer Maye. There is no dispute as to these facts. **Officer Maye did not read any part of the DL-26 implied consent form to Appellant. He simply asked her for consent and she freely gave it.** Argument at the hearing, however, established that Appellant was informed during a prior DUI arrest (prior to the Supreme Court's decision in *Birchfield*) that her refusal would result in adverse criminal

- 9 -

penalties. Appellant did not communicate her belief to Officer Maye, who could have corrected this erroneous understanding.

Based upon the totality of the circumstances of the interaction between Officer Maye and Appellant on the night in question, the [trial] court determined that Appellant's consent was voluntary, knowing and intelligent. [...The trial court's] standard for measuring the scope of a person's consent is based on an **objective** evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Objectivity is key and the court must use a 'reasonable person' standard. It is a slippery slope when the court and law enforcement are required to consider the subjective views of each individual defendant, i.e., the thoughts inside their head, to determine whether consent is voluntary. Such a proposition requires getting into the mind of the defendant, at the time of the arrest and when the individual is impaired, to subjectively assess her knowledge and understanding of the law. This approach would inevitably give rise to a host of other problems.

Since Appellant was not advised of any adverse criminal consequences or increased penalties for failing to submit to a blood test, *Birchfield* does not apply. Appellant never communicated that her consent was based upon her belief that criminal penalties could be imposed for her refusal; as a result, Officer Maye could not have known. Unless she was given misleading or false information by the arresting officer (which she was not) or subject to some sort of coercion, Appellant's consent is deemed to be knowing and voluntary. As a result, the trial court denied the motion to suppress. This was neither an error of law nor an abuse of discretion.

Trial Court Opinion, 8/3/2018, at 5-6 (some emphasis added; some emphasis in original; record and legal citations omitted).

Although the trial court correctly rejected Appellant's subjective understanding of Pennsylvania law as grounds for invalidating her consent, we conclude that, in view of Section 1547 and *Myers*, the trial court erred as a matter of law in finding Appellant's consent to a blood draw was voluntary.

- 10 -

In determining whether Appellant's consent was voluntary, the trial court considered the various factors as set forth above and concluded that while Appellant was in custody and not specifically informed of her rights regarding consent, police did not coerce her and she fully cooperated with police, answering all questions and complying with field sobriety tests. However, there is no dispute that the police asked Appellant to go to the hospital for a chemical blood test and she complied without receiving a recitation of her rights under DL-26B or Section 1547 or confirming her consent by signature. **See** N.T. 3/20/2018, at 7. Because Officer Maye was statutorily obligated to inform Appellant of her right to refuse chemical testing and the consequences arising therefrom and failed to effectuate those precautions, Appellant did not make a knowing and conscious choice of whether to submit to the blood draw. The choice belonged to Appellant, not Officer Maye. **See Myers**. Thus, while the trial court is correct that the officers did not mislead Appellant, the record is equally clear that they did not convey the information necessary for her to make an informed decision.[2] As such, we find that the trial court erred as a matter of law in denying suppression.

_____

[2] To be clear, in this case, no information regarding the consequences of refusal was conveyed to the suspect. In such circumstances, the rule in **Myers** of mandatory warnings should be followed. This is in contrast to a situation in which given warnings differ from those conveyed during prior DUI encounters. In those cases, given warnings generally prevail and reliance on previous police interactions does not weigh against voluntariness. **See Venable**, **Johnson**, and **Miller**.

Judgment of sentence vacated. Order denying suppression reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/19