J-A22009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT ALLEN RUNYON | : | |
| | : | |
| Appellant | : | No. 167 MDA 2020 |

Appeal from the Order Entered December 31, 2019
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0003474-2018

BEFORE:  SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:　　　　**FILED SEPTEMBER 18, 2020**

The Commonwealth appeals from the order granting the suppression

motion of Robert Allen Runyon (Appellee).  We affirm.

The facts as set forth in the affidavit of probable cause are as follows:

On [April 13, 2018], at approx[imately] 1222 hrs, [Trooper
Ismail El-Guemra of the Pennsylvania State Police (Trooper El-
Guemra)] was dispatched to a report of a crash involving a
pedestrian on [Interstate]-81 near mile marker 46.2, Carlisle
Borough, Cumberland County.

Upon [Trooper El-Guemra's] arrival, [he] observed a white
1995 Mack tanker truck bearing PA registration plate ZKK6488,
(Unit 1), behind a 2012 gray Honda Pilot, bearing a WV
registration plate GTURBK, (Unit 2).  Both vehicles were still
maintaining contact with each other and appeared to be heavily
damaged at their final rest.

At that time, the driver of the tanker truck, identified via his
driver's license as [Appellee], was sitting in the driver seat of his
vehicle, facing outside, with his door open.  [Trooper El-Guemra]
then interviewed him outside of his truck.

[Appellee] related he was traveling on Interstate 81 northbound, in the right lane. [Appellee] related a vehicle slowed down in front of him. He identified this vehicle to be a gray passenger vehicle, possibly a Mazda. He related he attempted to avoid colliding with this vehicle by swerving to the right, where he ran off of the roadway, struck the Victim's vehicle, and pushed it to its final rest. [Appellee] informed [Trooper El-Guemra] he did not see the Victim until he arrived at the final rest and exited his vehicle. During this conversation, [Appellee] had a faint odor of alcoholic beverage on his person and appeared lethargic. [Appellee] denied consumption of any drugs or alcoholic beverage. Later, an open 16 OZ. Miller Lite beer can was located on the driver side floor area [of Appellee's truck].

At that time, the [Victim], who [Trooper El-Guemra] identified via his driver license as Robert Albert MARSHALL, DOB 02/17/61, was in the back of a Carlisle Ambulance. [Trooper El-Guemra] observed that MARSHALL had blood on his head and around his eyes. EMS members attending to him advised [Trooper El-Guemra] that MARSHALL was in critical condition because he had sustained an open head injury, but he was breathing at that point.

Interviews and physical evidence conducted at the scene corroborated the following:

MARSHALL stopped his vehicle on the right shoulder of Interstate 81 at approx. mile marker 46.2 and was in the process of changing the left rear tire of his vehicle, prior to the crash. Unit 1 exited the northbound travel lane onto the shoulder impacting Unit 2. MARSHALL was air lifted to Holy Spirit hospital then transported to Hershey Medical Center. MARSHALL succumbed to his injuries and was pronounced dead, on [April 21, 2018].

\*        \*        \*

[Appellee] was later transported to Carlisle regional hospital for a blood draw. [Appellee] agreed to submit to a Chemical Blood Test.

[Appellee]'s blood results displayed a Blood Alcohol Content (BAC) of 0.225%.

Affidavit of Probable Cause, 12/10/18, at 1-2.

Appellee was charged with homicide by vehicle while driving under the influence, aggravated assault by vehicle while driving under the influence, driving under the influence of alcohol (DUI) – general impairment, DUI – highest rate of alcohol, two counts of DUI – commercial vehicle, driving on roadways laned for traffic, careless driving, reckless driving, restrictions on alcoholic beverages, and recklessly endangering another person.[1]

On July 1, 2019, Appellee filed an omnibus pre-trial motion seeking the suppression of his blood alcohol content (BAC) test results based on this Court's decision in *Commonwealth v. Krenzel*, 209 A.3d 1024 (Pa. Super. 2019), *appeal denied*, *Commonwealth v. Kliner-Krenzel*, 222 A.3d 370 (Pa. 2019). In *Krenzel*, this Court held that where a police officer fails to inform a DUI suspect of his or her right to refuse chemical testing and the consequences arising from that refusal, the DUI suspect cannot make a knowing and voluntary decision to submit to the blood test. *Id.* at 1032.

On July 19, 2019, the trial court held a hearing on Appellee's suppression motion. The transcript of the hearing is absent from the certified record. However, the Commonwealth concedes the parties "stipulated that the Pennsylvania State Police did not read [Appellee] his implied consent warnings through a DL-26 form." Commonwealth Brief at 5-6. Because a petition for allowance of appeal of our *Krenzel* decision was pending before

---

[1] 75 Pa.C.S.A. §§ 3735(a), 3735.1(a), 3802(a)(1), (c), (f)(1)(i), (f)(2), 3309(1), 3714(a), 3736(a), 3809(a); 18 Pa.C.S.A. § 2705.

the Pennsylvania Supreme Court at the time, the trial court delayed ruling until after December 17, 2019, when the Supreme Court denied the petition for allowance of appeal.

On December 31, 2019, the trial court granted Appellee's motion and suppressed the results of his BAC test. On January 24, 2020, the Commonwealth filed a timely notice of appeal, certifying, pursuant to Pennsylvania Rule of Appellate Procedure 311(d), that the court's order would terminate or substantially handicap the prosecution.[2]

On appeal, the Commonwealth presents the following issues for review:

I. Is the automatic suppression of blood test results improper where the only factor considered is whether or not a defendant was read his implied consent warnings through the use of a DL-26 form?

II. Is the holding in **Commonwealth v. Krenzel** inapplicable to CDL holders when driving their commercial motor vehicles as federal regulations mandate that they submit to chemical testing and historically CDL holders have been treated differently under the law?

Commonwealth Brief at 4.

Our standard of review when the court grants suppression is as follows:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are

---

[2] Both the trial court and the Commonwealth have complied with Pennsylvania Rule of Appellate Procedure 1925.

not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Vetter*, 149 A.3d 71, 75 (Pa. Super. 2016), *appeal denied*, 169 A.3d 577 (Pa. 2017) (citations omitted). Our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

In its first issue, the Commonwealth challenges the trial court's decision to grant suppression based on *Krenzel*. In that case, the appellant argued that her consent to a BAC test was not knowing and voluntary because the police did not read her the warnings from a DL-26 form or otherwise advise her of her right to refuse a blood draw. This Court first considered 75 Pa.C.S.A. § 1547 of the Pennsylvania Motor Vehicle Code, Pennsylvania's Implied Consent Law, which provides in pertinent part:

> **(a) General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section . . . 3802 (relating to driving under influence of alcohol or controlled substance)[.]
>
> **(b) Civil Penalties for refusal.--**
>
> > (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person[.]

* * *

    (2)   It shall be the duty of the police officer to inform the person that:

        (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2000[.]

75 Pa.C.S.A. § 1547(a), (b)(1), (b)(2)(i).

We then analyzed **Commonwealth v. Myers**, 164 A.3d 1162 (Pa. 2017), which examined Section 1547 in the context of a warrantless blood draw from an unconscious person. In **Myers**, our Supreme Court stated that Section 1547(b)(1) provides individuals with a statutory right to refuse chemical testing, and Section 1547(b)(2) explicitly requires the police to inform an individual of the consequences of such refusal. **Id.** at 1170-71, n.12. Thus, in **Myers**, the Supreme Court held that an individual is entitled to know that he or she has a right to refuse a blood test and the consequences of such refusal, "so that his choice to take a [chemical] test can be knowing and conscious." **Id.** at 1171. Because an unconscious person cannot exercise his or her right to refuse a blood test, the Supreme Court concluded that the appellant in **Myers** had not voluntarily consented to the blood draw. **Id.** at 1181.

Applying Section 1547 and **Myers**, this Court in **Krenzel** explained:

There is no dispute that the police asked [the] [a]ppellant to go to the hospital for a chemical blood test and she complied without receiving a recitation of her rights under DL-26[] or Section 1547 or confirming her consent by signature. Because [the police officer] was statutorily obligated to inform [the] [a]ppellant of her

right to refuse chemical testing and the consequences arising therefrom and failed to effectuate those precautions, [the] [a]ppellant did not make a knowing and conscious choice of whether to submit to the blood draw.

*Krenzel*, 209 A.3d at 1032.

In light of *Krenzel's* bright-line rule, the trial court in this case determined that *Krenzel* controlled. *See* Trial Court Opinion, 3/23/20, at 1-2. Both the Commonwealth and Appellee agreed that the police did not read Appellee the DL-26 consent form or otherwise inform him of his right to refuse blood testing, or the penalties associated with a refusal, before Appellee consented to the blood draw. Indeed, the Commonwealth concedes, "in following the *Krenzel* Court's ruling, the [t]rial [c]ourt was compelled to automatically suppress the blood test results because of the State Police's failure to read [Appellee] his implied consent warnings through the use of a DL-26 form." Commonwealth Brief at 17.

On appeal, the Commonwealth argues that *Krenzel* was wrongly decided. The Commonwealth asserts that courts should evaluate the voluntariness of the consent to a BAC test under a totality of the circumstances analysis, rather than apply a bright-line rule suppressing results when a police officer fails to read a defendant the DL-26 consent form or otherwise inform him or her of the right to refuse the blood draw. *See* Commonwealth Brief at 11-18. The Commonwealth opines:

> [The *Krenzel* analysis] is an improper analysis as it fails to consider the totality of the circumstances. If the voluntariness of the consent was appropriately evaluated, the totality of the

circumstances in the instant case would yield the only logical conclusion – [Appellee's] consent was valid. [Appellee] voluntarily spoke with troopers at the scene, complied with a PBT, voluntarily went with the troopers to the Carlisle Regional Medical Center, immediately agreed to a blood draw, and then sat down for a recorded interview with law enforcement. All of these factors clearly indicate valid consent and the mere fact that [Appellee] was not directly informed of his implied consent warnings should not negate the other factors. The holding in **Krenzel** improperly places such weight on the DL-26 form and actual reading of the implied consent warnings that it creates automatic suppression without considering any other factors for consent. This Honorable Court should hold that the totality of the circumstances test is the proper analysis, [Appellee's] consent was voluntarily, and that the blood test results should not be suppressed.

*Id.* at 18.

While we understand the Commonwealth's logic, "[i]t is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court . . . except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006) (citation omitted). Notably, the Pennsylvania Supreme Court denied the petition for allowance of appeal in **Krenzel**, and the parties agree that **Krenzel** is dispositive.[3] Accordingly, no relief is due.

In its second issue, the Commonwealth argues that **Krenzel** should not apply to Appellee because he is a Commercial Driver's License (CDL) holder.

---

[3] The Commonwealth states its reasons for appealing include "preserv[ing] the issue for potential Pennsylvania Supreme Court review." Commonwealth Brief at 11 n. 9.

The Commonwealth asserts that ***Krenzel*** should not apply to CDL holders "because of the inherent increased risk and specialized skill required to operate commercial vehicles." Commonwealth Brief at 19. The Commonwealth further contends that "commercial drivers are subjected to different laws and penalties when it comes to driving under the influence of alcohol and controlled substances," and "are aware of the risks and have enhanced knowledge of their licensing requirements." ***Id.*** at 26. The Commonwealth also suggests that Appellee's BAC test results should be admissible because federal regulations require such testing by employers following an accident involving a commercial vehicle.

After a thorough review of the certified record, we are constrained to find waiver because the Commonwealth raised this issue for the first time in its Rule 1925(b) statement. ***See Commonwealth v. Coleman***, 19 A.3d 1111, 1118 (Pa. Super. 2011) (finding claim waived where appellant raised it for the first time in Pa.R.A.P. 1925(b) statement). It is well-settled that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); ***see also Commonwealth v. Truong***, 36 A.3d 592, 598 (Pa. Super. 2012) ("New legal theories cannot be raised on appeal."). The record indicates that the Commonwealth did not present to the trial court its argument that ***Krenzel*** should not apply to Appellee because he was a CDL holder driving a commercial vehicle.

We again note that while the record reflects that the trial court held a suppression hearing on July 19, 2019, a transcript from the hearing is not part of the certified record, and the record does not indicate that the Commonwealth requested the transcript of the hearing. "The fundamental tool for appellate review is the official record of the events that occurred in the trial court." ***Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*) (citation omitted). The certified record consists of "original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court[.]" Pa.R.A.P. 1921. Items that are not part of the certified record cannot be considered on appeal. ***See Preston***, 904 A.2d at 6. In Pennsylvania, we place the responsibility of ensuring that the record on appeal is complete "squarely upon the appellant and not upon the appellate courts." ***Id.*** at 7 (citing Pa.R.A.P. 1931).

With regard to transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary for resolution of the issues appellant raises on appeal. ***See*** Pa.R.A.P. 1911(a). When an appellant fails to adhere to Rule 1911 and order all necessary transcripts, "any claims that cannot be resolved in the absence of the necessary transcripts or transcripts must be deemed waived for the purpose of appellate review." ***Preston***, 904 A.2d at 7 (citation omitted).

Here, our review of the record indicates that the Commonwealth failed to request the transcript from the suppression hearing, and it was never transcribed. We are therefore unable to determine whether the Commonwealth raised at the suppression hearing its second issue concerning Appellee being a CDL holder driving a commercial vehicle. Accordingly, the issue is waived.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/18/2020