J-S53041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                                      :                 PENNSYLVANIA
  :

         v.                                   :

  :

TYRONE GRIFFIN                     :

  :

        Appellant           :      No. 2211 EDA 2019

Appeal from the Judgment of Sentence Entered July 10, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010508-2017

BEFORE: SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            Filed: April 30, 2021

Tyrone Griffin (Griffin) appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County (trial court) after a jury convicted him of persons not to possess firearms. On appeal, Griffin challenges the trial court's denial of his motion to suppress a firearm that the police seized during a warrantless search of his car. After review, we reverse the trial court's order denying suppression, vacate the judgment of sentence and remand for further proceedings consistent with this memorandum.

**I.**

We take our facts from the suppression testimony of Officer Jonathan Alvarez, the Commonwealth's only witness at the hearing. On November 23,

_____

[*] Retired Senior Judge assigned to the Superior Court.

2017, a little after 1:00 a.m., Officer Alvarez was in a marked police car on routine patrol in the Germantown area of Philadelphia. Officer Alvarez was driving with his partner Officer William Benson in the passenger seat. At the time, Officer Alvarez had been a police officer for five years with four of those years assigned to the 14th District, which included Germantown. Since he began working in the district, Officer Alvarez estimated he has made about 15 to 20 arrests involving narcotics and firearms being found together.

Near the intersection of Germantown Avenue and Berkley Street, Officer Alvarez saw a 2011 Chevy Camaro traveling southbound on Germantown Avenue. Griffin was driving the Chevy Camaro and had a passenger with him in the front. Noticing that the Chevy Camaro had dark window tinting, Officer Alvarez began to follow the car for several blocks. Although the car did not swerve, speed or make any sudden stops, Officer Alvarez pulled the car over because of the possible violation under 75 Pa.C.S. § 4524.[1] When he saw the officer's lights, Griffin immediately pulled the Chevy Camaro, which was registered in his name, to the side of the road.

Officer Alvarez walked up to the driver's side window and asked Griffin to lower his window; Officer Alvarez later testified that could not see into the

---

[1] Motorists are prohibited from driving "any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S. § 4524(e)(1). Griffin has never challenged the initial stop.

car because of the tint. After Griffin lowered his window, Officer Alvarez asked for his license, registration and insurance. As Griffin looked for the information, Officer Alvarez smelled an odor of burnt marijuana coming from inside the car, describing it as a "mediocre" smell but not overwhelming. Though he had no specialized training in identifying marijuana, Officer Alvarez was familiar with its odor through his experience as a police officer. Despite smelling marijuana, however, Officer Alvarez did not see any narcotics or paraphernalia inside Griffin's car.

Besides the odor of marijuana, Officer Alvarez also noticed that Griffin appeared "very nervous" as he was looking for his information. According to Officer Alvarez, Griffin was breathing heavily and his hands were shaking. At the suppression hearing, though, Officer Alvarez admitted that Griffin did not have bloodshot eyes or dilated pupils.

After Griffin found his information in the glove compartment, Officer Alvarez asked him to exit the car. Griffin complied and got out. Officer Alvarez asked him if there was anything illegal in the car or if either he or his passenger had a permit to carry a firearm. Griffin responded that there was nothing illegal in the car and that his passenger had a permit to carry. Because Griffin was wearing a large puffy jacket, Officer Alvarez patted him down for weapons. Feeling none, Officer Alvarez put Griffin in the back of his patrol car without handcuffs.

Officer Alvarez then returned to the Chevy Camaro to conduct a warrantless search for narcotics based on the odor of marijuana. Although he did not find any narcotics, Officer Alvarez found a Ruger 9mm handgun under the driver's seat. After finding the handgun, Officer Alvarez went back to his patrol car to check if Griffin had a license to carry. As he did this, Officer Alvarez heard Griffin moving around in the back. This prompted Officer Alvarez to put handcuffs on Griffin. When Officer Alvarez tried to do so, Griffin pushed him away and took off running but was soon captured. Griffin was charged with persons not to possess, receiving stolen property, firearms not to be carried without a license, carrying firearms in Philadelphia and resisting arrest.[2]

Griffin filed an omnibus pretrial motion that included a motion to suppress physical evidence. At the suppression hearing, he clarified that he was moving to suppress any evidence recovered from his car as the product of an illegal search and seizure under Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment. He asserted that Officer Alvarez lacked probable cause to conduct a warrantless search of his car based on the odor of marijuana alone, emphasizing that there was no other evidence that Griffin had used marijuana.

_____

[2] The officers also found a black Taurus 9mm handgun under the front passenger seat. Griffin's passenger, who had a permit to carry, claimed that it was his firearm. The officers later allowed him to leave in Griffin's car.

- 4 -

The Commonwealth countered that the warrantless search was permissible under two theories. First, the Commonwealth argued that Officer Alvarez had reasonable suspicion to believe that Griffin was armed and dangerous, thus justifying a protective search of the car for weapons. Second, the Commonwealth argued that Officer Alvarez also had probable cause to search the car because of the odor of marijuana emanating from the car.

At the end of the hearing, the trial court denied Griffin's motion to suppress, stating that it found Officer Alvarez's testimony to be credible. In denying the motion, the trial court made this statement:

> This Court finds that under the totality of the circumstances, there was probable cause to search the vehicle. And even before that, there was reasonable suspicion justifying a frisk of the vehicle for weapons.
>
> In any event, in as much as the search was stated to be a drug search. That was justified by the probable cause that I referenced earlier. And, therefore, the 9mm Ruger was lawfully obtained.

N.T., 4/20/18, at 65.

Following denial of his motion to suppress, Griffin proceeded to a jury trial limited to the persons not to possess charge. At the end of trial, the jury found him guilty of that firearms offense. At sentencing, the trial court ordered Griffin to serve 8 to 16 years' imprisonment followed by four years' state probation. Griffin filed this appeal after the denial of a post-sentence motion. In his court-ordered Pa.R.A.P. 1925(b) statement, Griffin alleged, among other things, that the trial court erred in denying his motion to suppress. Rather than issue an opinion on the suppression issue, the trial

court filed a letter in lieu of an opinion relying on the reasons stated for denial at the suppression hearing.[3]

## II.

We first address whether the trial court erred in denying Griffin's motion to suppress the firearm.[4]  In his brief, Griffin asserts several arguments that Officer Alvarez lacked probable cause to conduct a warrantless car search of his car based on the odor of marijuana.  After Griffin filed his brief, though, this Court decided **Commonwealth v. Barr**, 240 A.3d 1263 (Pa. Super. September 25, 2020).  **Barr** addressed whether the odor of marijuana emanating from a car may provide police with probable cause to search that

_____

[3] In his Pa.R.A.P. 1925(b) statement, Griffin raised two issues that he also now raises on appeal.  The first is that the trial court violated this right to a public trial by not allowing his mother to be in the courtroom for jury selection. The other alleges that the trial court incorrectly instructed the jury in response to their questions during deliberation.  In response to the jury selection issue, the trial court issued a letter requesting that we remand this case to remedy the jury selection error.  In its letter, the trial court concluded that its exclusion possibly violates this Court's decision in **Commonwealth v. Jordan**, 212 A.3d 91 (Pa. Super. 2019) (trial court violated defendant's right to a public trial when the trial court excludes family members from jury selection).  However, because we find that Griffin is entitled to relief on his suppression challenge, we need not address whether the trial court erred during jury selection, nor whether it erred in its responses to the jury during deliberations.

[4] Our "standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Krenzel**, 209 A.3d 1024, 1027 (Pa. Super. 2019) (citation omitted).  Our scope of review is limited to the evidence presented at the suppression hearing.  **In re L.J.**, 79 A.3d 1073, 1088-89 (Pa. 2013).

car when Pennsylvania citizens are now allowed to legally consume marijuana. In ***Barr***, state troopers pulled over a car for a traffic violation. As they approached the car, both troopers smelled the odor of burnt marijuana coming from the car. Barr, who was seated in the front seat, was ordered to get out of the car along with the other two occupants. A state trooper then advised them that he could search the car because of the odor of marijuana. Upon hearing this, Barr presented a medical marijuana identification card that allowed him to possess and use medical marijuana. The troopers nevertheless searched the car without a warrant based on odor of marijuana. That search yielded, among other things, a loaded handgun and a Ziploc bag containing marijuana.

After being charged with two firearms offenses and possession of a small amount of marijuana, Barr filed a motion to suppress the evidence seized during the warrantless search. At suppression, Barr admitted expert testimony that there is no difference of odor between lawfully ingested marijuana through a vaping pen and unlawfully ingested marijuana from an unlawful source. At the end of the hearing, the trial court granted the motion to suppress the firearm and marijuana, after which the Commonwealth appealed to this Court to argue that the odor of marijuana alone was enough to allow a warrantless car search.

On appeal, in addressing that issue, we addressed whether marijuana odor alone was enough to establish probable cause to search without a

- 7 -

warrant, given Pennsylvania's passage of the Medical Marijuana Act (MMA).[5] We first addressed the law before passage of the MMA. After reviewing the pre-MMA case law, we concluded that, contrary to the Commonwealth's belief, there was no *per se* rule that the odor of marijuana always gave the police probable cause to search. Instead, the existing rule, when properly stated, was that the odor of marijuana "*may* alone be sufficient to establish probable cause to search in particular factual contexts." ***Id***. at 1276 (emphasis added). In practical terms, however, we explained that the circumstances when the odor of marijuana odor alone would be insufficient to establish probable cause to search "were necessarily rare or even nonexistent," since marijuana was illegal to possess "in all or virtually all circumstances" before passage of the MMA. ***Id***.

We then turned to what effect the MMA had on whether a probable cause search could still be premised alone on the odor of marijuana in some cases, often called the "plain smell doctrine." To do this, we examined the interplay between the MMA and the Controlled Substance, Drug, Device and Cosmetic Act (CSA),[6] which lists marijuana as a Schedule I controlled substance. 35 P.S. § 780-104(1)(iv). Finding that the MMA "clearly affected" the plain smell doctrine, we explained:

---

[5] 35 P.S. §§ 10231.101-2110.

[6] 35 P.S. §§ 780-101 to 780-144.

> … the plain smell doctrine is a specific application of the totality-of-the-circumstances test for probable cause, crafted in light of the previously universal fact of marijuana's illegality and its distinctive odor. The MMA has clearly altered the underlying factual context in which that probable cause test applies. This much is true: marijuana is a prohibited substance under the CSA, despite the passage of the MMA. However, it is undisputed that a substantial number of Pennsylvania citizens may now possess and consume marijuana legally pursuant to the MMA. Previously, every instance in which marijuana was detected by smell indicated the commission of a crime. Soon, hundreds of thousands of Pennsylvanians will become potential lawful sources of that same odor. Thus, the strength of the inference of illegality stemming from the odor of marijuana has necessarily been diminished by the MMA in Pennsylvania.

*Barr*, 240 A.3d at 1278 (internal citations and footnotes omitted).

We later summarized what role the odor of marijuana can permissibly play in the determination of whether there is probable cause that a crime is being committed.

> The odor of marijuana alone, absent any other circumstances, cannot provide individualized suspicion of criminal activity when hundreds of thousands of Pennsylvanians can lawfully produce that odor. What it does provide to police is a general, probabilistic suspicion of criminal activity based on the fact that most citizens cannot legally consume marijuana. Thus, it is a factor that can contribute to a finding of probable cause, consistent with prior precedent discussed above, assuming some other circumstances supply more individualized suspicion that the activity is criminal.

*Id*. at 1287.

Because the trial court in *Barr* afforded no weight to the marijuana in granting suppression or evaluated any other factors, we vacated its suppression order and remanded for reconsideration with these directions:

> We instruct the court that while it is not compelled by case law to find that probable cause exists solely on the basis of the odor of

marijuana, that fact may, in the totality of the circumstances, still contribute to a finding of probable cause to believe the marijuana detected by the odor was possessed illegally. The court may consider Appellee's presentation of an MMA card as a factor that weighs against a finding of probable cause, as it provides at least some evidence tending to suggest the marijuana in question was possessed legally. However, the court must also consider (or explain why it need not consider) the other factors suggested by the Commonwealth as contributing to a finding of probable cause, such as Appellee's statements and demeanor during the stop, as well as the nature of the location of the stop.

*Id.* at 1289.

Recently, we faced a somewhat similar factual scenario in *Commonwealth v. Grooms*, ___ A.3d ___, 2021 WL 710438 (Pa. Super. February 24, 2021). Unlike *Barr*, *Grooms* involved an issue on direct appeal from an adverse judgment of sentence. There, the police conducted a warrantless search after an officer walked past an occupied parked car and smelled an odor of fresh marijuana coming from inside the car. Rather than wait for the owner, the police unlocked the car and searched it for narcotics, finding marijuana, crack cocaine and ecstasy pills. The owner eventually walked up and admitted that the narcotics were his. At the suppression hearing, the police conceded that the decision to unlock the car and conduct the warrantless search was based solely on the odor of marijuana. Based on the controlling law at the time of the hearing, the suppression court denied the motion, advancing a bright line, *per se* rule that the odor of marijuana alone may establish probable cause.

We reversed and ordered a new trial and remanded with instructions to consider in addressing the motion to suppress. Relevant to our holding in this case, the **Grooms** panel found Barr "instructive and controlling," even though it was not available to the suppression court at the time of its determination. We explained:

> Instantly, the trial court determined the officer was entitled to rely on the odor of marijuana to conduct a warrantless search of Appellant's vehicle, which was unoccupied, locked, and lawfully parked during business hours in a mall parking lot. Our review of the record does not indicate that the trial court considered—beyond the smell of marijuana—any additional factors in analyzing probable cause. Here, as in **Barr**, we once again conclude that the trial court should have considered Appellant's argument about the effect of the passage of the MMA as a relevant factor in its probable cause analysis.

**Id**. at *8.

On the motion to suppress, we remanded to the trial court to determine on the existing record whether there were additional factors beyond the smell of marijuana to establish probable cause for the warrantless car search. **Id**; **see also Commonwealth v. Shaw**, ___ A.3d ___, 2021 WL 610152 (Pa. Super. 2021) (relying on **Barr** to reverse the suppression court's order that the police officer had probable cause to conduct warrantless car search based on odor of marijuana).

In this case, at the suppression hearing, Officer Alvarez was clear that he searched Griffin's car for narcotics "[b]ased off the marijuana smell alone[.]" N.T., 4/20/18, at 30. The trial court found his testimony credible and found that he had probable cause to search the car without a warrant,

although while it found that it was based "on the totality of the circumstances," it did not mention what those circumstances were. *Id*. at 65. On remand, the trial court should determine on the existing record whether there were additional factors besides the odor of marijuana to support probable cause for Officer Alvarez to conduct the warrantless search of Griffin's car or had a reasonable suspicion to believe that Griffin was armed and dangerous and, therefore, had justification to do a protective search of the car for weapons.[7] If there were not any additional circumstances, the trial court should suppress the results of the search.

Judge of sentence vacated. Order denying motion to suppress reversed. Case remanded for further proceedings. Jurisdiction relinquished.

_____

[7] The trial court should also determine the applicability of our Supreme Court's recent decision in **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020) (holding that Article I, Section 8 of the Pennsylvania Constitution requires warrantless vehicle searches to be supported by both probable cause and exigent circumstances). **Alexander** overturned the Court's prior adoption of the federal automobile exception in **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014) (plurality). Because Alexander announced a new criminal rule, it can apply retroactively only to cases where the issue in question was properly preserved at all stages of adjudication up to and including any direct appeal. **See Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*) ("To be entitled to retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below.").

Because **Alexander** was decided after the parties submitted their briefs, we are without any directed advocacy addressing whether Griffin would have preserved this issue in the trial court. As a result, on remand, the trial court should direct the parties to address whether Griffin is permitted to avail himself of **Alexander's** new criminal rule and, if so, what effect it has the on trial court's probable cause determination.

*Judgment Entered.*

_Joseph D. Seletyn, Esq._
*Prothonotary*


*Date: 4/30/21*