J-S32018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID LINCOLN LEE | : | |
| | : | |
| Appellant | : | No. 397 WDA 2021 |

Appeal from the Judgment of Sentence Entered October 20, 2017
In the Court of Common Pleas of Fayette County
Criminal Division at CP-26-CR-0000032-2017

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED:  December 3, 2021**

David Lincoln Lee (Appellant) appeals *nunc pro tunc* from the judgment of sentence imposed after a jury found him guilty of homicide by vehicle while driving under the influence, accidents involving death or personal injury, homicide by vehicle, driving at safe speed, careless driving, reckless driving, and two counts of driving under the influence of alcohol (DUI).[1]  In his sole issue on appeal, Appellant challenges the denial of his pretrial motion to suppress the results of a warrantless blood alcohol content (BAC) test, arguing

---

[1] 75 Pa.C.S.A. §§ 3735(a), 3742(a), 3732(a), 3361, 3714(a), 3736(a), and 3802(a)(1) & (c).

that the evidence was obtained in violation of *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016).[2]  We affirm.

The facts adduced at the suppression hearing establish that shortly after midnight on October 29, 2016, Appellant fatally struck a pedestrian with his vehicle and fled the scene.  *See* N.T., 7/5/17, at 8, 12, 41.  Based on a description of the vehicle, Pennsylvania State Police (PSP) dispatched a radio bulletin for officers in the area to be on the lookout for a blue Ford pickup truck.  *Id.* at 14.  PSP troopers, while canvassing the area, saw a blue Ford pickup truck parked in front of a residence in Lemont Furnace, Fayette County.  *Id.* at 15.  The truck had damage to the front passenger side, headlight, and antennae, and there appeared to be blood and human tissue on the truck.  *Id.* at 15, 32.  The police ran the vehicle's registration and learned it was registered to Appellant.  *Id.* at 16, 41.  Shortly after 2:00 a.m., police knocked on the front door of the residence, and an occupant answered and allowed them to enter.  *Id.* at 16-17.  The police immediately saw Appellant asleep on a couch and noticed that he smelled of alcohol and had urinated in his pants.

---

[2] *Birchfield* held that a driver suspected of DUI cannot be criminally sanctioned for refusing a blood test unless a search warrant was obtained. *See Birchfield*, 136 S. Ct. at 2185-86 ("motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense."); *see also Commonwealth v. Hays*, 218 A.3d 1260, 1274 (Pa. 2019) ("pursuant to *Birchfield*, a warrantless blood draw is generally unconstitutional, and the illegality is not cured by a state's implied consent law.").

*Id.* at 17-18, 20. The police took Appellant into custody based on the condition of Appellant and the blue Ford truck. *Id.* at 18-20.

PSP Trooper Jared King (Trooper King) testified that at approximately 3:00 a.m., he transported Appellant from the Uniontown PSP barracks to Uniontown Hospital for a blood draw. *Id.* at 19, 23, 26. Before the blood draw, Trooper King read Appellant the chemical testing warnings from Pennsylvania Department of Transportation (PennDOT) form DL-26B.[3] *Id.* at 23-24. **Appellant read and signed the DL-26B form and consented to the blood draw**, which occurred shortly after 4:00 a.m. *Id.* at 12, 24-25. The blood draw indicated a BAC of 0.172%. *Id.* at 10.

The Commonwealth charged Appellant with various violations of the Motor Vehicle Code. On May 3, 2017, Appellant filed an omnibus pretrial

_____

[3] Regarding the chemical testing warnings, we have explained:

Prior to **Birchfield**, [and prior to Appellant's arrest in this case], officers were statutorily required to warn individuals arrested for DUI that refusal to submit to a blood draw would result in **enhanced criminal penalties**. 75 Pa.C.S. § 1547(b)(2)(ii). To comply with this statutory requirement, officers would read [the predecessor PennDOT chemical testing warnings form,] DL-26, which warned individuals of the enhanced criminal penalties if they refused to consent to a blood draw.

**Commonwealth v. Venable**, 200 A.3d 490, 494 n.3 (Pa. Super. 2018) (emphasis added). Shortly after **Birchfield** was issued, PennDOT revised form DL-26 to remove any reference to enhanced criminal penalties for refusal to submit to a blood test. **See id.** This revised form, DL-26B, was the version Trooper King read to Appellant. **See** N.T., 7/5/17, at 23-24 (Trooper King testifying he read Appellant the "updated" DL-26B form, which did not "in any way refer to criminal penalties").

motion (OPT motion) seeking, *inter alia*, to suppress his blood test results under **Birchfield**. **See**, **e.g.**, OPT Motion, 5/3/17, at ¶ 25 ("based on the totality of the circumstances, [Appellant's] consent to the search and seizure of [his] blood was coerced and the evidence should be suppressed."). At the suppression hearing, four PSP troopers testified consistently with the facts recited above, and the DL-26B form was admitted into evidence as Commonwealth Exhibit 5. **See** N.T., 7/5/17, at 26.[4] On September 5, 2017, the Commonwealth filed a memorandum of law in opposition to the OPT motion. **See**, **e.g.**, Memorandum of Law, 9/5/17, at 10 (unnumbered) ("the blood draw was based on the informed consent of [Appellant], memorialized by the DL-26B form."). That same date, the trial court denied the OPT motion.

The case proceeded to trial, after which the jury convicted Appellant of the abovementioned crimes. On October 20, 2017, the trial court sentenced Appellant to an aggregate 4 to 10 years in imprison. Appellant did not file post-sentence motions, but took a direct appeal. This Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal. **Commonwealth v. Lee**, 195 A.3d 1041 (Pa. Super. 2018) (unpublished memorandum), *appeal denied*, 201 A.3d 727 (Pa. 2019).

On May 20, 2019, Appellant timely filed a first petition pursuant to the Post Conviction Relief Act (PCRA). **See** 42 Pa.C.S.A. §§ 9541-9546 in which

---

[4] The DL-26B form is appended to the trial court's May 21, 2021 Pa.R.A.P. 1925(a) opinion.

he challenged the denial of his suppression motion. By agreement between the Commonwealth and Appellant, on March 19, 2021, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc* solely for Appellant to raise a **Birchfield** claim in this appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents a single question: "Whether Appellant's blood test should have been suppressed under **Birchfield v. North Dakota**?" Appellant's Brief at 3.[5]

Our standard of review regarding challenges to the denial of a suppression motion

> is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

**Commonwealth v. Yandamuri**, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

As explained above, "**Birchfield** applies to situations in which a defendant's consent is obtained based upon the threat of additional criminal

---

[5] The Commonwealth has not filed an Appellee brief.

penalties if the blood test is refused." ***Commonwealth v. Gaston***, 239 A.3d 135, 141 (Pa. Super. 2020); ***Birchfield***, 136 S. Ct. at 2185-86.[6]  Such is not the situation here, because the DL-26B form that Trooper King read to Appellant contained **no reference to enhanced criminal penalties**.  ***See*** N.T., 7/5/17, at 24; Commonwealth Ex. 5 (DL-26B form); ***see also Commonwealth v. Smith***, 177 A.3d 915, 921-22 (Pa. Super. 2017) (finding ***Birchfield*** inapplicable where DUI motorist was read the revised DL-26B form and therefore was not advised that she would be subject to enhanced criminal penalties if she refused to submit to a blood test).

Having determined that ***Birchfield*** does not require suppression of Appellant's blood test results, we consider whether his consent to the blood draw was voluntary.  ***See Commonwealth v. Myers***, 164 A.3d 1162, 1178 (Pa. 2017) (explaining that ***Birchfield***'s holding "supports the conclusion that . . . an individual must give actual, voluntary consent at the time that testing is requested.").

Appellant argues he did not voluntarily consent to the blood test because he "was in police custody as a suspect in [a] hit and run murder case, and

---

[6] In response to ***Birchfield*** (and after Appellant's arrest), the legislature amended the Motor Vehicle Code on July 20, 2017 to limit enhanced criminal penalties for DUI convictions to:  (1) refusals of breath tests; and (2) refusals of blood tests where the authorities obtained a search warrant.  ***See*** 75 Pa.C.S.A. §§ 3803(b), 3804(c); ***see also id.*** § 1547(b) (civil penalties for refusal to submit to chemical testing); ***Venable***, 200 A.3d at 495-96 (discussing amendments).

based on the totality of these circumstances Appellant would have assumed he had no option but to agree to the blood test." Appellant's Brief at 11; *see also id.* at 11-12 ("Appellant would have reasonably assumed that . . . a refusal to consent to a blood test would be used against him at trial.").

It is well-settled that an established exception to the warrant requirement is "consent, voluntarily given." *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000); *see also id.* at 888-89 (where, as here, "the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus."). The Commonwealth has the burden of proving that consent to a blood draw was voluntarily given. *Commonwealth v. Smith*, 77 A.3d 562, 573 (Pa. 2013).

> The standard for measuring the scope of a person's consent is based on an **objective** evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

*Commonwealth v. Evans*, 153 A.3d 323, 328 (Pa. Super. 2016) (emphasis added; citation omitted).

A non-exhaustive list of relevant factors for the voluntariness of consent includes:

> 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's

education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

*Commonwealth v. Gillespie*, 821 A.2d 1221, 1225 (Pa. 2003) (citation omitted).

Instantly, the following exchange occurred between the prosecutor and Trooper King at the suppression hearing:

Q. And did you read [the DL-26B] form to [Appellant]?

A. Yes, I read it to him verbatim.

Q. Did he understand, or did he acknowledge that he understood what it said?

A. He did.

Q. And did he in fact sign the form?

A. Yes, he did.

* * *

Q. And did [Appellant] then consent to a blood draw?

A. Yes, he did.

* * *

Q. Did you in any way coerce [Appellant] to give a blood sample?

A. No, I did not.

Q. Did you in any way threaten him?

A. No, I did not.

Q. His consenting to a blood draw was completely voluntary?

A. Correct.

N.T., 7/5/17, at 24-25.

Upon review, an objective evaluation of the above exchange, and the totality of the circumstances, supports the conclusion that Appellant voluntarily consented to the blood draw. Further, the DL-26B form Appellant read and signed informed him that Trooper King was making a noncompulsory "request." *See* Commonwealth Ex. 5. Although Appellant was under arrest and handcuffed at the time, nothing in the record indicates that Trooper King used improper tactics to coerce Appellant to submit to blood testing. Thus, based on our independent review of the record, we discern no error or abuse of the trial court's discretion in finding that Appellant voluntarily consented to the blood draw. *See*, *e.g.*, *Commonwealth v. Robertson*, 186 A.3d 440, 448 (Pa. Super. 2018) (where police read revised DL-26B form to suspected DUI motorist prior to blood draw, holding motorist's consent to same was voluntary; where the only factor weighing against voluntariness was that the motorist was in custody, "[n]o reasonable fact-finder could weigh [the abovementioned *Gillespie*] factors and determine that [motorist's] consent was involuntary."); *see also id.* ("police officers had no affirmative duty to tell [motorist] she would **not** be subjected to enhanced criminal penalties if she refused the blood tests." (emphasis in original)); *Venable*, 200 A.3d at 497-98 (trial court properly denied suppression of DUI motorist's warrantless blood test results where police read him revised DL-26B form and he

voluntarily consented to blood draw); *Cf.* Appellant's Brief at 11 (Appellant claiming he **subjectively** "assumed he had no option but to agree to the blood test."); *Commonwealth v. Krenzel*, 209 A.3d 1024, 1032 (Pa. Super. 2019) (trial court erred in finding DUI motorist's consent to blood draw was voluntary where "police asked [the motorist] to go to the hospital for a chemical blood test and she complied **without receiving** a recitation of her rights under DL-26B or [75 Pa.C.S.A. §] 1547 or confirming her consent by signature." (emphasis added; citation omitted)).

Finally, Appellant contends the blood test results should have been suppressed where "exigent circumstances did not exist to justify a warrantless blood test." Appellant's Brief at 11. This claim is flawed because Appellant voluntarily consented to a blood draw. Therefore, the Commonwealth had no reason to apply for a search warrant or allege the existence of exigent circumstances.

For the reasons discussed above, the trial court properly denied Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2021

- 10 -